# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DAURIN PATTON,

              Petitioner,          :    Case No. 3:17-cv-078

    - vs -                        District Judge Thomas M. Rose
                                         Magistrate Judge Michael R. Merz

WARDEN,
 Warren Correctional Institution,
                                  :
              Respondent.

---

# REPORT AND RECOMMENDATIONS

---

      This habeas corpus case under 28 U.S.C. § 2254 is before the Court for decision on the merits. Upon initial review of the Petition (ECF No. 1), the Court ordered the State to answer the Petition and set a date twenty-one days after the return was filed for Petitioner to file a reply/traverse (ECF No. 2). In compliance with the Order, the Attorney General has filed the state court record ("SCR", ECF No. 6) and a Return of Writ (ECF No. 7). The time within which Petitioner was to have filed a reply has expired and no reply has been filed. The case is therefore ripe for decision.

**Procedural History**

      Petitioner was indicted by the Lucas County Grand Jury on December 6, 2011, on one count of aggravated robbery (Ohio Revised Code § 2911.01(A)(1)), with a firearm specification (Count 1); and two counts of aggravated murder (Ohio Revised Code § 2903.01(A) and (F)),

each with a firearm specification (Counts 2 and 3) (ECF No. 6, State Court Record Exhibit 1, PageID 33). The trial jury found him guilty as charged and sentenced to life imprisonment without parole (SCR, ECF No. 6, PageID 84).

Patton appealed to the Ohio Sixth District Court of Appeals raising the following assignments of error:

> 1. The trial court erred by permitting the State to play the video of two alleged gang members standing with a semi-automatic "assault style" rifle. Patton's Constitutional right to Confront Witnesses was violated and it was improper hearsay.
>
> 2. The trial court erred and abused its discretion through the admission of the video, the Russian SKS 45 rifle, gang evidence and statements made by Serrano and her son were more prejudicial than probative. The video, rifle and other gang evidence was not relevant.
>
> 3. The State failed to properly authenticate the You Tube video in violation of Evid.R. 901(A). As such, Patton was denied his right to a fair trial.
>
> 4. The trial court erred by allowing the prosecutor to engage in improper impeachment of Patton's alibi witness including an unprosecuted event while she was in junior high school and an allegation in a police report, neither of which resulted in a conviction.
>
> 5. The verdicts were against the manifest weight of the evidence.
>
> 6. The trial court erred by not granting Patton's motion to suppress the out-of-court identifications made of Patton from photo arrays. The identifications were made contrary to Ohio statutory law and in violation of his right to due process of law.
>
> 7. Patton did not receive the effective assistance of counsel to which he has a Constitutional right.
>
> 8. If this Court agrees with certain assignments of error and holds in favor of Patton, then the state's case must fail due to insufficient evidence.

9. The prosecutor engaged in a pattern of misconduct that was intentionally designed to prejudice the jury in order to obtain a conviction at all costs.

(SCR, ECF No. 6, PageID 91.) The Sixth District affirmed the convictions and sentence. *State v. Patton*, 2015-Ohio-1866, 2015 Ohio App. LEXIS 1783 (6th Dist. May 15, 2015), appellate jurisdiction declined, 144 Ohio St. 3d 1426 (2015). The instant habeas corpus petition followed on March 6, 2017 (ECF No. 1).

Patton pleads the following grounds for relief:

**GROUND ONE:** Violation of the Confrontation clause and improper hearsay in violation of the United States Constitution Fifth Amendment.

**Supporting Facts:** The trial court erred by permitting the State to play a video with two alleged gang members with semi-automatic "assault style" rifles [SKS 47 rifle] and other gang violence not relevant to the case.

**GROUND TWO:** The trial court erred by allowing the prosecutor to engage in improper impeachment of Petitioner's alibi witness under Evid. R. 608(B), including an unprosecuted event while she was in junior high school and an allegation in a police report, neither of which resulted in a conviction, in violation of the United States Constitution.

**Supporting Facts:** The trial court allowed the prosecution to impeach Petitioner's alibi witness with allegation in a police report from high school which did not result in a conviction.

**GROUND THREE:** The jury verdicts were against the manifest weight of the evidence.

**Supporting Facts:** The jury verdicts did not support the evidence presented in this case.

**GROUND FOUR:** The trial court erred by not granting Petitioner's motion to suppress the out-of-court identification of Petitioner made from photo arrays, which were contrary to law and in violation of the due process clause of the United States Constitution.

> **Supporting Facts:** The trial court violated Petitioner's right to a fair trial by allowing out-of-court photo identifications of Petitioner.

*Id.* at PageID 4, 6, 7, and 9.

# Analysis

## Grounds One:  Confrontation Clause

In his First Ground for Relief, Patton asserts the trial court violated his rights under the Confrontation Clause by permitting the prosecutor to play a video with two alleged gang members with semi-automatic rifles and other gang violence not relevant to the case.

The Warden asserts Ground One is barred by Patton's procedural defaults in presenting this claim to the Ohio courts, both by making no contemporaneous objections in the trial court and then by failing to appeal to the Ohio Supreme Court from an adverse appellate ruling on this claim (Return, ECF No. 7, PageID 2609-13).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional

rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Murray v. Carrier*, 477 U.S. at 485; *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir.

2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio has a relevant procedural rule that requires making an objection to trial court error at the time it occurs. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). The Sixth Circuit has repeatedly held this rule is an adequate and independent state ground for decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley*, 422 F.3d 379, 387 (6th

Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac*, 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

The Sixth District Court of Appeals actually enforced this rule against Petitioner. It held:

> **[\*P36]** Under assignment of error No 1, appellant argues that the trial court erred by permitting the state to play a video of two alleged gang members with a semi-automatic rifle at trial. Appellant contends that admission of the video violated his Sixth Amendment right to confront witnesses and that the video also constituted inadmissible hearsay.

> **[\*P37]** The video is less than three minutes in length and was uploaded to YouTube in December 2007. It depicts two young men with an SKS style assault rifle with two ammunition magazine clips. The state used the video at trial as evidence that appellant, as a member of the gang Bagdad Boyz, had access to weapons of the type used to kill Timothy Blair and Veronica Serrano.

> **[\*P38]** Appellant raises objections to the video on confrontation and hearsay grounds for the first time on appeal. Prior to trial, appellant objected to evidence of gang related activity in a motion in limine on the grounds that the evidence was irrelevant and more prejudicial than probative. At trial counsel renewed the objection on the same grounds: "Objection, Judge, based on prior objection." Accordingly, appellant waived all but plain error on claimed error challenging the admissibility of the evidence on confrontation and hearsay grounds. *See State v. Thompson*, 141 Ohio St. 3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 174.

> **[\*P39]** The Ohio Supreme Court has identified the standard for noticing plain error:

>> First, there must be an error, *i.e.*, a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that

the trial court's error must have affected the outcome of the trial.

*State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, ¶ 11, quoting *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16 and *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002 Ohio 68, 759 N.E.2d 1240 (2002).

[*P40] Even where these three prongs are met, notice of plain error is taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Eafford* at ¶ 12, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus

**Confrontation Clause**

[*P41] The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In "*Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."

[*P42] The state contends that the YouTube video was admitted without sound and, therefore, the court's ruling did not admit any testimonial statement at trial. The record discloses, however, that statements from the video were recited at trial.

[*P43] At the hearing on appellant's motion to suppress the video, the trial court originally ordered that the video could be played at trial but excluded all audio, except for references to Bagdad and Bagdad Boyz memberships, and references to the weapon involved in the video.

[*P44] At trial, the court approved a different procedure to achieve the same result. The state played the video portion of the recording, without any audio. The state was permitted to question Office Doug Allen of the Toledo Police Department's Gang Task Force concerning statements made in the video within the limited areas of content previously set by the court. The court permitted this procedure for reasons of "expediency" as a means to enforce

the court's limitations on use of audio from the without requiring technical editing of the recording.

[*P45] Officer Doug Allen testified that prior to trial he had heard the audio portion of the recording. The officer testified that the two men in the video were doing a rap. The officer testified to the names of the two men in the video and identified them as gang members of the Bagdad Boyz gang. Officer Allen testified further that the individuals in the video identified themselves as "Bagdad" and that they were from the "North." The state also questioned the officer as to statements made in the video about how many of the particular type weapon they had:

> Q. And with respect to that particular weapon, do they indicate how many of these type weapons that they have?
>
> A. They make reference at one point in here that they have a few of them.

[*P46] In our view, the fact that the state was permitted to use Officer Allen to voice statements made in the video, as a manner of convenience to avoid editing problems at trial, did not remove the testimonial nature of the court's ruling. The court's ruling permitted introduction into evidence of the out of court statements of the young men, voiced by Officer Allen, that the Bagdad Boyz gang possessed a few SKS automatic rifles at the time of the video. As neither of the young men testified at trial, admitting their out of court statements into evidence at trial denied appellant his Sixth Amendment to confront witnesses against him and constituted an obvious defect in trial proceedings.

## Hearsay

[*P47] "To constitute hearsay, two elements are needed. First, there must be an out-of-court statement. Second, the statement must be offered to prove the truth of the matter asserted. If either element is not present, the statement is not 'hearsay.'" *State v. Maurer*, 15 Ohio St.3d 239, 262, 15 Ohio B. 379, 473 N.E.2d 768 (1984); see Evid.R. 801(C). The statements by the two young men were out of court statements and the statements were admitted to prove the truth of the matter asserted, namely that the Bagdad Boyz gang possessed a few automatic rifles of the type shown in the video. Accordingly, admitting the statements into evidence at trial was an obvious legal error, as the statements constitute hearsay. Evid.R. 802.

[*P48] We conclude, however, that these errors did not rise to the level of plain error, as the admission of the YouTube video did not affect the outcome of the trial. As more fully discussed in our consideration of whether the verdicts were against the manifest weight of the evidence, we conclude that the evidence of appellant's guilt at trial was overwhelming. We find assignment of error No. 1 not well-taken.

*State v. Patton*, *supra*.

A state court plain error holding is an enforcement of a procedural default, not a waiver of it. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003).

Thus the Sixth District enforced the contemporaneous objection rule against Patton and he has not shown any cause or prejudice to excuse that default.

Secondly, the Warden argues Ground One is procedurally defaulted because the adverse appellate ruling was not appealed to the Ohio Supreme Court. In order to avoid procedurally defaulting a habeas ground for relief, a petitioner must present it at every level of the state court system, including the state supreme court. *O'Sullivan*, *supra*. Patton's sole proposition of law on appeal to the Ohio Supreme Court was

Trial courts should suppress eyewitness identifications when the police intentionally refuse to respect the safeguards set forth in R.C. 2933.83. In the alternative, juries should be instructed that the method presented in R.C. 2933.83(A) is required, but that the police did not comply. R.C. 2933.83; *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

This proposition of law does not include the claim made in Ground One and that claim is therefore procedurally defaulted on this second basis as well as on the contemporaneous objection ground.

**Ground Two:  Prosecutorial Misconduct**

In his Second Ground for Relief, Patton claims he was denied a fair trial when the prosecutor was permitted to improperly cross-examine Patton's alibi witness.  The Warden asserts this Ground is also procedurally defaulted because it was not fairly presented to the Ohio courts as a federal constitutional claim and the adverse appellate ruling was not appealed (Return, ECF No. 7, PageID 2613-14).

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane*, 516 U.S. 99 (1995); *Riggins v. McMackin*, 935 F.2d 790, 792 (6th Cir. 1991).  The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009).

> In determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, we consider whether: 1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; 2) the petitioner relied upon federal cases employing the constitutional analysis in question; 3) the petitioner relied upon state cases

> employing the federal constitutional analysis in question; or 4) the petitioner alleged "facts well within the mainstream of [the pertinent] constitutional law."

*Hicks v. Straub*, 377 F.3d 538, 552-53 (6ᵗʰ Cir. 2004), citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6ᵗʰ Cir. 2000); and *Picard v. Connor*, 404 U.S. 270, 276, 277-78 (1971).

The Sixth District discussed this issue purely in terms of Ohio R. Evid. 608. It cited no federal case law as involved. In arguing Assignment of Error number four, Patton's appellate counsel did not argue in terms of any constitutional claim (Appellant's Briefs, SCR, ECF No. 6, PageID 140-46). Although she repeatedly accused the prosecutor of misconduct, it was always in terms of his violation of the Ohio Evidence rule. Thus no claim of unconstitutional prosecutorial misconduct was made to the Sixth District.

Even if this Court were to read the fourth assignment of error as making a constitutional claim, that claim was procedurally defaulted, as was the claim in Ground One, by failing to include it on appeal to the Ohio Supreme Court.


**Ground Three: Manifest Weight of the Evidence**


To the extent this Ground is worded as a manifest weight claim, it is not cognizable in federal habeas corpus. *Johnson v. Havener*, 534 F.2d 1232 (6ᵗʰ Cir. 1986).

In his "Supporting Facts" for this Ground, Patton argues the evidence does not support the jury verdicts. Because he is proceeding pro se, Patton is entitled to a liberal construction of his pleading, so this Ground could be read as claiming the evidence was insufficient. That does state a claim under the Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979). A sufficiency of the evidence claim was presented to the Sixth District as Assignment of Error No. 8. The Sixth

District decided that claim as follows:

**Sufficiency of the Evidence**

[*P136] Under Assignment of Error No. 8, appellant contends that his convictions are not supported by sufficient evidence. Appellant was convicted of one count of aggravated robbery, a violation of R.C. 2911.01(A)(1), and two counts of aggravated murder, a violation of R.C. 2903.01(A) and (F). Both aggravated murder convictions included accompanying firearm specifications under R.C. 2941.145, which the court merged at sentencing.

[*P137] Sufficiency of the evidence is "'that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support a jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541, quoting Black's Law Dictionary 1433 (6 Ed.1990). In *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), the Ohio Supreme Court outlined the analysis required to apply this standard:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)

*Id.* at paragraph two of the syllabus.

[*P138] We consider the convictions for aggravated murder first. R.C. 2903.01 provides in pertinent part:

> (A) No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy.
>
> * * *
>
> (F) Whoever violates this section is guilty of aggravated

murder, and shall be punished as provided in section 2929.02 of the Revised Code.

**[\*P139]** The aggravated murder counts included R.C. 2941.145 firearm specifications. The firearm specification requires evidence "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A).

**[\*P140]** Multiple witnesses testified at trial concerning the identity and conduct of a man dressed all in black outside on Page Street on the night of November 15, 2011. The evidence was that Veronica Serrano and her son, Timothy Blair, were shot by a firearm outside their residence at 1357 Page Street that night and died as a result of injuries from the shootings.

**[\*P141]** Lawrence Elliott testified he saw the shootings and identified appellant as the shooter at trial. Troy Minor, a neighbor living across the street, testified that he saw the same man in black argue with Veronica Serrano outside 1357 Page Street that night, saw the man leave when police approached, and saw him return later and shoot both Serrano and her son, Timothy Blair there.

**[\*P142]** Multiple witnesses testified that appellant went by a street name of "38." The evidence at trial was that Veronica Serrano made a dying declaration that the shooter was "38." The evidence at trial included a statement by Timothy Blair, an excited utterance made after hearing a threat to kill his brother Gary. Timothy called out "No, no, no, no, 38. It's my brother. It's all cool." The shootings followed. Jerry Hamblin, the wife of Troy Minor, testified that the man arguing with Veronica Serrano across the street that night identified himself. Hamblin testified that the man said: "I'm 38, mother-fucker, while he's out there with a shotgun."

**[\*P143]** Tonia Atwell, who lived up the street at 1331 Page, testified that she knew appellant, that she spoke to him, and that he was dressed all in black that night. Atwell also testified that appellant threatened to kill Veronica Serrano if she called police. Other witnesses at trial also testified to a threat by appellant to kill Serrano if she called police.

**[\*P144]** Viewing the evidence at trial in a light most favorable to the state, we conclude that it was reasonable for the trier of fact to

conclude beyond a reasonable doubt that appellant purposely, and with prior calculation and design, caused the deaths of Veronica Serrano and Timothy Blair and used a firearm to commit the offenses. We conclude that there was sufficient evidence at trial to convict appellant of two counts of aggravated murder, violations of R.C. 2903.01(A) and (F) and also find the accompanying firearm specifications under R.C. 2941.145.

[*P145] With respect to the conviction of aggravated robbery, a violation of R.C. 2911.01(A)(1), the statute provides:

2911.01 Aggravated Robbery

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

[*P146] Lawrence Elliott testified that appellant took a mostly empty bottle of Jim Beam liquor from him at gunpoint on November 11, 2011. Elliott testified that appellant pointed a shotgun at his chest.

[*P147] Sara King and Susanna Degler testified that they stumbled on the incident as Sara King dropped Susanna Degler off at home after work. Degler testified at trial that three men were in the street as they pulled up — Elliott, Gary Blair, and a man dressed all in black with a shotgun pointed at Elliot's chest. Sara King saw one of the men give a bottle of alcohol to a man dressed all in black with a gun in his hand. King testified that the gun looked like a shotgun and that the gunman put the bottle in his coat.

[*P148] Viewing the evidence at trial in a light most favorable to the state, we conclude that it was reasonable for the trier of fact to conclude beyond a reasonable doubt that appellant in committing a theft offense had a deadly weapon on or about his person and displayed the weapon or brandished it in committing the offense. We conclude that there was sufficient evidence at trial to convict appellant of the offense of aggravated robbery, a violation of R.C. 2911.01(A)(1).

**[\*P149]** We find assignment of error No. 8 not well-taken.

*State v. Patton, supra.*

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra*. A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132,

110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See United States v. Hilliard, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."

17

> *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker*, 567 U.S. at 43 (per curiam).

Construing Ground Three as a claim of insufficient evidence, it is not well-taken. The Sixth District's opinion recites evidence that is sufficient to convict Patton of all three offenses in question.

Aside from its failure on the merits, Ground Three also fails because it was not included in Patton's appeal to the Ohio Supreme Court and is therefore procedurally defaulted.

**Ground Four: Improper Out-of-Court Identification**

In his Fourth Ground for Relief, Patton asserts the trial court committed prejudicial constitutional error by admitting in evidence out-of-court identifications of him. Patton presented this claim to the Sixth District as his Sixth Assignment of Error as both a due process claim and a claim of violation of Ohio Revised Code § 2933.83. The court decided the claim as follows:

> **[\*P15]** We consider appellant's assignments of error out of turn and consider assignment of error No. 6 first. In the assignment of error, appellant contends that the trial court erred in denying his motion to suppress out of court identifications made of him by photo arrays. Appellant contends that the ruling constituted error on two grounds: first that the photo identification procedure used did not comply with Ohio statutory requirements under R.C.

2933.83 and second, use of the out of court identifications denied appellant due process of law.

[*P16] Appellate review of a trial court's ruling on a motion to suppress evidence presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The Ohio Supreme Court has identified our standard of review:

> [A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539. *Id.*

**Photo Identification Issues**

[*P17] The hearing on the motion to suppress proceeded on November 16, 2012. At the hearing, the state advised the trial court that it would not use evidence of the photo identification of the appellant by Susanne Degler at trial. Accordingly, the motion to suppress was limited to consideration of the admissibility photo identifications of appellant by Gary Blair, Lawrence Elliott and Anthony Blair prior to trial.

[*P18] The state used a six-pack array to present photographs for identification rather than using a folder system identification procedure. [FN 1 A six pack array presents six photographs on one sheet of paper. The folder system uses individual photographs placed in separate folders in a procedure set forth in R.C. 2933.83(A)(6).] Appellant argues that the folder system is the preferred system under R.C. 2933.83 and that the trial court erred in failing to suppress identifications by Gary Blair, Lawrence Elliott and Anthony Blair from six-pack arrays.

[*P19] The state argues that R.C. 2933.83 does not require use of a folder system rather than six pack array. We agree. This court has held that R.C. 2933.83 does not require use of the folder system. *State v. Winters*, 6th Dist. Lucas No. L-12-1041, 2013-Ohio-2370, ¶ 42; *accord State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 77. Additionally, noncompliance with R.C. 2933.83

alone does not provide an independent ground to suppress. *State v. Johnson*, 6th Dist. Lucas No. L-13-1032, 2014-Ohio-4339, ¶ 11, 13; *State v. Henry*, 6th Dist. Lucas No. L-11-1157, 2012-Ohio-5552, ¶ 46.

**[*P20]** R.C. 2933.83(C)(3) directs that where evidence of a failure to comply with R.C. 2933.83 "is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup." The trial court referred to the folder system as the sequential presentation method of photo arrays in its jury instructions and instructed the jury:

> The sequential presentation method uses single photos to be viewed by the witness one at a time.
>
> The six-pack array method displays six photographs at the same time. The law prefers the utilization of the sequential method. Utilization of the six-pack method in and of itself is not impermissible.
>
> The fact that the sequential method was not utilized is a matter which you may properly consider when weighing the reliability and the weights to be given the testimony of any identification which was used in whole or in part from a photo array.

**[*P21]** After the enactment of R.C. 2933.83, the overriding analysis on motions to suppress photo identifications remains whether the identification procedure was "impermissibly suggestive." *Johnson* at ¶ 13; *Henry* at ¶ 46; *see Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). "[W]hen a witness has been confronted with a suspect before trial, due process requires a court to suppress * * * identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." *State v. Waddy*, 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992), *superseded by constitutional amendment on other grounds*, citing *Neil v. Biggers* and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

**[*P22]** In *Waddy*, the Ohio Supreme Court identified the two-step analysis. "Under Neil's two-pronged test, the first question is whether the identification procedure was unnecessarily suggestive." *Waddy* at 438. The second "is whether, under all the circumstances, the identification was reliable, i.e., whether

20

suggestive procedures created 'a very substantial likelihood of irreparable misidentification." *Id.* at 439, citing *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The court also detailed the five *Neil v. Biggers* factors to consider in determining whether the identification was reliable:

> Key factors are the witness's opportunity to view (in the case of a voice identification, to hear) the defendant during the crime, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the witness's certainty, and the time elapsed between the crime and the identification.

*Neil*, 409 U.S. at 199-200, 93 S.Ct. at 382, 34 L.Ed.2d at 411. *Waddy* at 439.

**[*P23]** Toledo police used three separate arrays in conducting out of court photo identifications in this case, lineups 22602A, 22603B, and 22625. Lineups 22602A and 22603B both used a July 3, 2011 photo of appellant, but with appellant's photo placed in different locations on the sheet. Lineup 22625 used a November 28, 2011 photo of appellant.

**[*P24]** Gary Blair and Lawrence Elliott were both presented lineup 22602A on November 26, 2011. Neither identified a suspect. Blair said it could be the individual in photos 4, 5, or 6. Elliott said it was between 5 and 6. Appellant was depicted in photo 5. On that date, Anthony Blair identified appellant from a different array, using lineup 22603B.

**[*P25]** Subsequently both Gary Blair and Elliott were presented with an array different from the original array. On November 28, 2011, Lawrence Elliott identified appellant as the suspect in array 22603B. On December 2, 2011, Gary Blair identified appellant as the suspect in array 22625.

**[*P26]** Appellant objects to use of the 22625 array in Gary Blair's identification of him. He argues that persons appellant identified as potential suspects in the first array (22602A) were not included in the 22625 array. The state responds that the 22625 array depicts a different photograph of appellant than used in the 22602A array and appears with longer hair and more facial hair in his photograph. The state argues that use of the array was appropriate as photographs of other individuals where chosen to depict similarity to appellant's changed appearance.

**[\*P27]** Detective Robert Schroeder prepared all three arrays. Detective Schroeder testified that that appellant's appearance changed markedly between July and November, 2011. The second photo array used a more current photo of appellant with longer hair and more facial hair.

**[\*P28]** Schroeder testified that he used a computer program to search a database of photographs to secure a block of photographs of men who looked similar to the photographs of appellant for the arrays. The computer program provided a block of 50 similar photographs from which Schroeder chose photographs for use with appellant's photograph for the arrays.

**[\*P29]** At the hearing on the motion to suppress, the trial court conducted a detailed review of the photographs used in the photo arrays. It concluded that the arrays included photographs of African-American men of similar age. The backgrounds and shading of the photographs were similar. The men had the same range of complexion, were of similar build, and had generally similar hairstyles and facial hair. None of the photographs depicted distinguishing features. All had fuller lips. The court concluded: "the Court makes the factual finding that here is nothing about the photos selected and the photos that comprise the other individuals that were with Mr. Patton in those photo arrays to be unduly suggestive." We find competent, credible evidence in the record supports that conclusion.

**[\*P30]** Appellant also argues that it was possible that Gary Blair and his brother may have interacted concerning the arrays either at the residence or at the police department prior to the photo identifications conducted on December 2, 2011. However there is no evidence to support that contention. Furthermore, Anthony Blair had previously identified appellant in a photo identification conducted on November 26, 2011. The record reflects that on December 2, 2011, Gary Blair proceeded first and identified appellant's photograph from a different array than viewed by Anthony on November 26.

**[\*P31]** Appellant argues that the trial court erred in overruling the motion to suppress because the photo identifications of him by Gary Blair and Elliott were unreliable. Appellant argues both were intoxicated at the time of the events on November 25, 2011, and both gave inconsistent statements and lied to police. Neither identified appellant from the first array. Appellant argues that it was dark out and the perpetrator wore a hoodie, obscuring his face.

[*P32] Although the crimes occurred at night, Page Street has street lights. Both Gary Blair and Lawrence Elliott were in close, direct contact with the offender. Both observed the offender in close proximity, threatening them with a shotgun. Blair testified that he was in reach of the gun and attempted to grab it. Witnesses testified that Elliott stood in the street as the gunman pointed the shotgun at his chest. Elliott testified he saw the gunman shoot the victims. These circumstances are of the type that would focus a high degree of attention of the witnesses on the gunman.

[*P33] While neither identified appellant when first presented a photo array for identification, they both did at the second. The crime occurred on November 25, 2011 and the identifications occurred within a few days. Elliott identified appellant on November 28, 2011, with "no doubt." Gary Blair identified appellant on December 2, 2011. Both also made in court identifications of appellant.

[*P34] Considering all the circumstances including the *Neil v. Biggers* reliability factors, we conclude that the photo identifications were not impermissibly suggestive and that the identifications were sufficiently reliable to permit admission of evidence of the identifications at trial consistent with due process of law.

[*P35] We find assignment of error No. 6 not well-taken.

*State v. Patton*, *supra*.

Patton preserved this claim for merits review in habeas by presenting it as his sole proposition of law on appeal to the Ohio Supreme Court. This Court cannot, however, review the state law portion of the claim.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685,

693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

The Magistrate Judge concludes the Sixth District's decision is a reasonable application of the relevant Supreme Court precedent. It found that the trial court had properly considered the factors required by *Neil v. Biggers*, *supra*, and had made detailed findings of fact in support of its conclusion that the photo arrays were not unduly suggestive. Whether a pre-trial identification procedure is unduly suggestive is a mixed question of law and fact. Here both the trial court and the Sixth District applied the correct federal standard to the underlying facts as they found them after careful review of the evidence. Those findings are entitled to deference from this Court, particularly in the absence of any argument to the contrary.

**Conclusion**

Grounds One, Two, and Three are procedurally defaulted on the bases given above. Ground Four is without merit because the Sixth District's conclusion on the constitutional claim that is part of Ground Four is neither contrary to nor an objectively unreasonable application of clearly established United States Supreme Court precedent. Therefore the Magistrate Judge respectfully recommends that the Petition be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would

be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 19, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).